**Peter SHAW and Angela Lansbury Shaw, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. 74 Civ. 5060.**

United States District Court,
S. D. New York.

April 29, 1976.

Michael I. Saltzman, New York City, for plaintiffs.

Robert B. Fiske, Jr., U. S. Atty., New York City, for Government; Louis G. Corsi, Asst. U. S. Atty., New York City, of counsel.

## MEMORANDUM AND ORDER

KEVIN THOMAS DUFFY, District Judge.

The United States, as defendant in this action to recover federal income taxes pursuant to 28 U.S.C. § 1346(a)(1), has moved to have the case dismissed or transferred to the Court of Claims because of improper venue. It is clear to me that venue does not lie in this district and that the government has not waived its initial objections concerning the locality of the suit. The case is therefore transferred as requested.

Plaintiffs Peter and Angela Lansbury Shaw filed their complaint in this action on November 19, 1974. Defendant's answer, filed on February 24, 1975, included an allegation that venue was improper because plaintiffs did not reside in this judicial district, 28 U.S.C. § 1402(a)(1). Rather than filing a motion to dismiss or transfer at that time, however, the government proceeded to serve interrogatories on and depose plaintiffs in accordance with the Federal Rules of Civil Procedure.

The discovery process revealed that during the years immediately preceding this suit, plaintiffs had resided abroad, primarily in Ireland. Mrs. Shaw, an actress, returned to the United States for a brief tour in a play in 1972 but thereafter returned to her residence in Europe, where she remained through 1973. In 1974, Mrs. Shaw toured this country and Canada in another play for 26 weeks. The play opened in New York City for an additional 15 weeks a month prior to the institution of this lawsuit. Upon arrival in New York, the Shaws established their residence in a hotel, but soon entered into a six-month renewable lease of a furnished apartment. The Shaws have since cancelled this lease and Mrs. Shaw testified at her deposition that she did not intend to stay in the New York area. She has also abandoned tentative plans to perform in a Broadway show that was to begin in the summer of 1975. The Shaws presently reside in London. Since 1972, they have filed their federal income tax returns with the Director of International Operations of the Internal Revenue Service as citizens whose principal place of abode is outside the United States.

These facts strongly suggest that at the time this action began the Shaws did not "reside" in this judicial district as that term is used in 28 U.S.C. § 1402(a)(1). The decisions in this district have consistently defined "residence," as used in the Judicial Code to refer to natural persons, as synonymous with "domicile." See *Smith v. Murchison,* 310 F.Supp. 1079, 1089 (S.D.N.Y. 1970); *Buchheit v. United Air Lines, Inc.,* 202 F.Supp. 811, 814 n. 2 (S.D.N.Y.1962)

(and cases cited therein); *Koons v. Kaiser,* 91 F.Supp. 511, 517 (S.D.N.Y.), appeal dismissed 187 F.2d 1023 (2d Cir. 1950), *cert. denied,* 340 U.S. 942, 71 S.Ct. 505, 95 L.Ed. 679 (1951). See also *Kahane v. Carlson,* 527 F.2d 492 at 494 (2d Cir. 1975); J. Moore, Federal Practice ¶¶ .142[5–.1–1 to –2]. Plaintiffs' intermittent presence in New York, which is apparently occasioned by and coextensive with Mrs. Shaw's theatre commitments, does not indicate the intent to remain indefinitely that is necessary to establish domicile in a given locality. See *Rosenstiel v. Rosenstiel,* 368 F.Supp. 51, 57 (S.D.N.Y.1973). That the Shaws maintain personal records and have retained an attorney in New York are insufficient indicia of their residence here for purposes of 28 U.S.C. § 1402. The Shaws continued dwelling abroad and attestation on income tax forms that they are non-resident citizens of themselves provide overwhelming evidence that they do not consider New York as their home for purposes other than this lawsuit. Thus venue for this action does not lie in this district.[1]

■■■ Venue, however, is a privilege personal to the defendant and improper venue will be considered to have been waived unless timely objection is interposed, 28 U.S.C. § 1406(b), Fed.R.Civ.P. 12(h). Although defendant initially raised the defense of improper venue in its answer, Fed.R.Civ.P. 12(b), plaintiffs contend that the government's subsequent acts constitute an abandonment of the defense and a waiver of any future objection to venue. Specifically, plaintiffs assert that defendant never filed a motion to dismiss or transfer, but proceeded to take discovery relating primarily to the merits of the case. Plaintiffs further contend that the discovery devices employed by the government would not have

been readily available in the Court of Claims, which defendant maintains is the exclusive court in which this action may be brought, 28 U.S.C. § 1491. In light of this conduct, plaintiffs argue, a motion to dismiss for improper venue filed thirteen months after service of the complaint and six months after completion of discovery should not be considered.[2]

While the government's delay in filing a motion to dismiss or transfer cannot be condoned, I cannot believe that the intervening period was so great and the prejudice incurred by plaintiffs was so detrimental as to require a holding that the initial objection to venue was abandoned. The taking of depositions would not, by itself, produce a waiver of the venue issue, *Heiss v. Nielsen,* 132 F.Supp. 541 (D.Neb.1955), especially where, as here, discovery was necessary to frame the averments included in the motion to dismiss or transfer that was ultimately made.

The differences in discovery devices available in this court and the Court of Claims are matters of degree rather than of kind. Depositions in the Court of Claims may be taken only by leave of the Court or by voluntary agreement of the parties, Court of Claims Rules 71(c), 81(a) (compare Fed.R.Civ.P. 30), and an order of the Court of Claims is necessary to require the production of documents, Court of Claims Rule 74 (compare Fed.R.Civ.P. 34). Plaintiffs have not demonstrated that had these formalities been complied with, the Court of Claims would not have permitted defendants to use the identical discovery procedures that were in fact employed by the parties under the Federal Rules of Civil Procedure. Thus I am constrained to find insufficient prejudice to plaintiffs in their

---

1. The government has at times misconstrued the issue as one of subject matter jurisdiction. The district courts clearly have the power to adjudicate a claim for an income tax refund, 28 U.S.C. § 1346(a)(1). The only question is whether these particular plaintiffs may request the exercise of that authority in this locality. See *Neirbo Co. v. Bethlehem Shipbuilding Corp.,* 308 U.S. 165, 167, 60 S.Ct. 153, 84 L.Ed. 167 (1939).

2. Plaintiffs have recently submitted a request to the Internal Revenue Service for an administrative refund of the sum claimed in this action. While a favorable determination on that request would likely moot the instant motion, at the present time this Court has not been advised of any decision by the IRS, and the motion remains ripe for decision.

subjection to liberal discovery procedures to constitute a waiver of the government's initial and timely allegation of improper venue.

Given the time that has already expired since the institution of this action, the interests of justice would not be served by dismissing the complaint. The case is therefore transferred to the Court of Claims pursuant to 28 U.S.C. §§ 1346(a)(1), 1406(a).

IT IS SO ORDERED.